UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:18-cv-81488-KAM/WM

PAMELA D. PAVLIK,

                Plaintiff,

vs.

SHOREHAM CONDOMINIUM
ASSOCIATION, INC.,

                Defendant.
_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, PAMELA D. PAVLIK, by and through her undersigned counsel, and sues Defendant, SHOREHAM CONDOMINIUM ASSOCIATION, INC., and states as follows:

### I. NATURE OF THE ACTION

1. This is a civil action brought pursuant to the federal Fair Housing Act [hereafter "FHA"], 42 U.S.C. §§ 3601, et seq., 42 U.S.C. § 1982, and the Florida Fair Housing Act [hereafter "FFHA"], Fla. Stat. §§ 760.20, et seq., for damages and injuries arising from the Defendants', SHOREHAM CONDOMINIUM ASSOCIATION INC.'s unlawful discrimination against Plaintiff, PAMELA D. PAVLIK, a person with disabilities. SHOREHAM CONDOMINIUM ASSOCIATION, INC. violated the FHA and FFHA by refusing to make reasonable accommodations to rules, polices, practices, and/or services when such an accommodation is necessary to afford the Plaintiff, PAMELA D. PAVLIK, an equal opportunity to use and enjoy her dwelling, by threatening Plaintiff, PAMELA D. PAVLIK, on account of her having exercised her Fair Housing rights, interfering with her Fair Housing rights, by executing and otherwise allowing false documents to be filed in support of foreclosure, and by making her dwelling unavailable to her on account of her disability.

### II. JURISDICTION AND VENUE

2. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. §§ 3601, *et seq.,* and § 3613.

Case Number: 9:18-cv-81488-KAM/WM

___

3. Venue is proper under 28 U.S.C. § 1391(b) because Defendant SHOREHAM exists in this District and Defendant resides in this District, and the events giving rise to the Plaintiff's claims arose in this District.

### III. PARTIES

4. Plaintiff [hereafter "PAMELA D. PAVLIK" and/or "Plaintiff"], is an individual with a disability that qualifies her for the protections of the FHA and FFHA. Plaintiff resides at 125 Shore Court #306B, North Palm Beach, Florida 33408.

5. Defendant, SHOREHAM CONDOMINIUM ASSOCIATION, INC. [hereafter "SHOREHAM," "the Association," and/or "Defendant"], is a Florida non-profit corporation, organized and operating pursuant to Chapter 718, Florida Statutes, with its principle address in Palm Beach County at 140 INTRACOASTAL POINTE DRIVE #306 JUPITER, FL 33477, and is responsible for administering and governing its housing complex pursuant to its Articles of Incorporation, Declaration of Condominium and By-Laws, its Rules and Regulations, and amendments thereto.

6. The condominium units governed by SHOREHAM are "dwellings" within the meaning of 42 USC § 3602(b) of the FHA, as well as § 760.22(4) of the FFHA.

7. SHOREHAM is subject to the anti-discrimination provisions of both the FHA and FFHA.

8. PAVLIK purchased her condominium, located within the SHOREHAM community, on or about May 30, 2013.

9. PAVLIK suffers from and has a history of suffering from severe depression and anxiety that substantially limit one or more of her major life activities. Accordingly, PAVLIK has a "handicap" pursuant to 42 U.S.C. § 3602(h), FHA and Fla. Stat. § 760.22.

10. Upon the advice of her psychiatrist, in November of 2015 PAVLIK obtained "Jaxson," a dog to be her emotional support animal [hereafter "ESA"].

11. The ESA helps stabilize PAVLIK's mood and ameliorate the symptoms of her anxiety and depression.

12. SHOREHAM does not allow residents to maintain dogs as pets. According to SHOREHAM's governing documents "A unit owner shall be permitted to have one cat, providing the animal weighs 20 lbs or less, and providing the Board of Directors approves such pet."

Case Number: 9:18-cv-81488-KAM/WM

---

13.     On December 3, 2015, PAVLIK notified SHOREHAM's Property Manager, Beth White [hereafter "White"], that PAVLIK was treating with a psychiatrist, and that upon the psychiatrist's medical advice, PAVLIK had obtained a dog to assist her in coping with her depression. PAVLIK expressly requested that this medical information be kept confidential, but invited White to contact her if she "would like to discuss these issues further." PAVLIK'S December 3, 2015, email is marked, attached, and incorporated herein as "Exhibit 1."

14.     Included with PAVLIK's December 3, 2015, communication, was the December 2, 2015, explanatory prescription from her psychiatrist, Dr. Agresti, addressed to SHOREHAM, stating:

> *Due to emotional illness, Pam has certain limitations caused by depression. In order to help alleviate these difficulties and to enhance her ability to live comfortably, I am prescribing an emotional support animal that will assist Pam in coping with her depression and anxiety.*

Dr. Agresti's December 2, 2015, explanatory prescription is marked, attached, and incorporated herein as "Exhibit 2."

15.     Dr. Agresti expressly invited SHOREHAM to contact him with any questions. *Id.*

16.     By letter dated January 20, 2016, SHOREHAM, through its attorney Lora Howe [hereafter "Howe"], declared that PAVLIK had not provided sufficient medical evidence. SHOREHAM did not request clarification of PAVLIK's accommodation request, but instead commanded that PAVLIK "must immediately find a new home for her dog." The letter touted SHOREHAM's authority to take legal action against PAVLIK "seeking removal of your dog from your home if you allow your dog to continue to reside in your home"" and proclaimed authority to recover its attorney's fees and costs and to fine PAVLIK up to $1000.00. SHOREHAM threatened: "your failure to abide by Shoreham's Declaration can become costly to you." Attorney Howe's January 20, 2016, letter is marked, attached, and incorporated herein as "Exhibit 3."

17.     PAVLIK promptly responded to SHOREHAM by written communication to Howe, explaining that since obtaining her ESA her "life has changed for the better." PAVLIK further conveyed the extreme distress suffered at the mere notion of Jaxson's removal and again attached Dr. Agresti's December 2, 2015, prescription explanation, emphasizing the prior invitations to SHOREAHM to "[p]lease feel free to call his office at the number provided on letterhead." PAVLIK's January 20, 2016, email is marked, attached, and incorporated herein as "Exhibit 4."

18.     Neither SHOREHAM nor its counsel contacted PAVLIK's psychiatrist.

3

Case Number: 9:18-cv-81488-KAM/WM

_____

19. Instead, Attorney Howe replied that that Dr. Agresti's communication was inadequate, and threatened PAVLIK with legal action by SHOREHAM to remove PAVLIK's ESA "and/or start the fining process" if PAVLIK did not intend on finding a new home for her ESA. Attorney Howe's January 20, 2016, email is marked, attached, and incorporated herein as "Exhibit 5."

20. Because of SHOREHAM's multiple legal threats, PAVLIK retained attorney Daniel Marshall [hereafter "Attorney Marshall"] to transmit a more detailed letter from her psychiatrist, Dr. Agresti, and demand an accommodation on PAVLIK's behalf.

21. On January 29, 2016, Dr. Agresti drafted a more detailed letter explaining his ESA prescription for PAVLIK:

> *As per your request for additional information regarding my prescription for an emotional support animal for Pamela Pavlik, allow me to further explain why I've prescribed the animal and improvements it's had on Ms. Pavlik's condition.*
>
> *As was stated in my letter dated December 2nd, Ms. Pavlik is a patient of mine and is suffering from depression and anxiety. In order to respect my patient's privacy, I don't care to explain the specifics of her treatment or the details of her condition due to psychiatrist-patient confidentiality. I can however explain the significance of prescribing a therapeutic dog and the effects it's had on her.*
>
> *Due to depression and anxiety Ms. Pavlik has experienced a lack of energy, excessive sleeping, inability to participate in social functions, business meetings, and episodes of fear caused by panic attacks. These impairments have caused struggles in her work performance, social activity and family life.*
>
> *Since owning the dog Ms. Pavlik has shown improvement with many of these symptoms. The dog has given her a sense of responsibility and has required her to adapt to a schedule, giving her a greater awareness of stability. Her bond with the dog has increased feelings of security and purpose. The affection that the dog provides has also improved her level of depression and has produced a significant decline in the frequency of panic attacks.*
>
> *I hope this letter serves you well and gives a better understanding of the significance of prescribing a therapy dog. Please feel free to contact my office with any additional questions or concerns you have regarding this matter.*

Dr. Agresti's January 29, 2016, letter is marked, attached, and incorporated herein as "Exhibit 6."

22. On February 2, 2016, SHOREHAM, again through its counsel Attorney Howe, sent PAVLIK a letter by email threatening PAVLIK that if she did not remover her ESA:

4

Case Number: 9:18-cv-81488-KAM/WM

___

> *within seven (7) days, from the date of this letter Shoreham intends to file an arbitration petition with The Division of Florida Condominiums, Timeshares, and Mobile Homes of the Department of Business and Professional Regulation as required by the Florida Statutes prior to instituting court litigation. The Florida Statutes provide that the prevailing party in an arbitration proceeding shall be awarded the costs of the arbitration and reasonable attorney's fees. An arbitration award for attorney's fees and costs can be turned into a final judgment against the party responsible for paying the attorney fees and costs. Therefore, your failure to abide by the demands in this letter can become costly to you.*

Attorney Howe's February 2, 2016, letter is marked, attached, and incorporated herein as "Exhibit 7."

23. Each of SHOREHAM's threats to take legal action greatly exacerbated PAVLIK's anxiety.

24. On February 10, 2016, Attorney Marshall sent SHOREHAM a formal request that PAVLIK be allowed to live with her dog for emotional support, and provided Dr. Agresti's January 29, 2016, letter as further evidence of PAVLIK's disability-related need for an accommodation. Attorney Marshall's February 10, 2016, letter is marked, attached and incorporated herein as "Exhibit 8."

25. Still unsatisfied, on February 16, 2016, SHOREHAM through its counsel, Attorney Howe, responded to Attorney Marshall further threatening PAVLIK:

> *From the information provided to me your client's dog is not considered a 'service animal'. Florida Statute 413.08(9) states that it is a crime for a person to misrepresent that they have a 'service animal' when they do not have a 'service animal', as the statute states in pertinent part the following:*
>
> > *'A person who knowingly and willfully misrepresents herself or himself, through conduct or verbal or written notice, as using a service animal and being qualified to use a service animal or as a trainer of a service animal commits a misdemeanor of the second degree.'*

A complete copy of Attorney Howe's February 16, 2016, letter is marked, attached, and incorporated herein as "Exhibit 9."

26. At no time did SHOREHAM, its attorney, or any other SHOREHAM representative contact Dr. Agresti, PAVLIK, or PAVLIK's attorney for additional information regarding PAVLIK's disability or need for an accommodation.

27. The February 16, 2016, threatening letter sent on behalf of SHOREHAM also greatly exacerbated the symptoms of PAVLIK's anxiety and depression.

Case Number: 9:18-cv-81488-KAM/WM

_____

28. Because Attorney Marshall's February 10, 2016, letter inadvertently erroneously cited a statute pertaining only to service dogs, Attorney Marshall emailed Attorney Howe on February 22, 2016:

> *I received you letter dated February 16, 2016, and I want to clarify one point. Although my letter mentioned a "service animal", I think it was clear from Dr. Agresti's letters that Ms. Pavlik's dog is an emotional support animal. As you yourself recognized, the Fair Housing Act is not limited to service animals, and an emotional support animal can also be covered. Based on the documentation we have provided, Ms. Pavlik's dog falls under the purview of the Act, and therefore she is entitled to an accommodation.*

Attorney Marshall's February 22, 2016, email is marked, attached, and incorporated herein as "Exhibit 10."

29. On February 22, 2016, due to SHOREHAM's repeated threats and continuing refusal to grant her an accommodation, PAVLIK had an appointment with Dr. Agresti to discuss the severe anxiety she was experiencing.

30. Dr. Agresti thought that a notarized affidavit might convince SHOREHAM to cease its harassment of PAVLIK regarding her ESA, and accordingly provided PAVLIK a notarized affidavit attesting to his opinion that PAVLIK medically needed her ESA. Dr. Agresti's February 21, 2016, Affidavit is marked, attached, and incorporated herein as "Exhibit 11."

31. Dr. Agresti's affidavit was provided to SHOREHAM'S counsel, Attorney Howe, on or about February 22, 2018.

32. On February 26, 2016, Attorney Marshall's role as PAVLIK's attorney concluded.

33. On February 28, 2016, SHOREHAM, through its counsel, Attorney Howe, emailed PAVLIK, attacking and dismissing Dr. Agresti's professional opinion that PAVLIK needs an ESA accommodation:

> *I am sending this e-mail directly to you due to your former attorney advising that he no longer represents you per the e-mail below.*
> *In the Affidavit from your doctor it states the following under 'the animal is able to ameliorate the effects of the disability by':*
> *The dog has helped Pam adapt to a daily schedule, which provides a sense of stability. It's also allowed her to experience purpose and responsibility for caring for the animal, pushing her to be more active. Walking the dog is not only beneficial for her mental state but also has physical benefits. Petting the dog during a panic attack slows her heart rate while also experiencing the unconditional love from the animal."*

> *Although your dog is not considered an 'emotional support animal' per the facts and doctor's letters under the Fair Housing Act you can request approval from the Board for a cat weighing less than 20 pounds to reside in your unit per Shoreham's Declaration. A cat should satisfy the same needs stated in the Affidavit that a dog would.*
>
> *As stated in my most recent letter to your attorney, the fact that you do not bring the dog to all of your social functions and business meetings contradicts your doctor's letters that your dog is needed in order to prevent panic attacks so that you can participate in social functions and business meetings. I just provided the association with the fining process to start fining you for the violation. I also received the required vote from the Board to move forward with arbitration but I wanted to check with your first to see if you will willingly find a new home for your dog.*
>
> *If arbitration and litigation is necessary the Florida Statutes will allow me to seek a Court Order for you to reimburse the association for their attorney fees and costs. I have turned arbitration awards for attorney fees and costs into final judgments in the past in order to seize owners' assets and garnish their wages to pay the final judgment amounts and will do the same for this case if it comes down to that. Please advise if you will willingly remove the dog. Otherwise, I will be moving forward with arbitration.*

Attorney Howe's February 28, 2016, email is marked, attached, and incorporated herein as "Exhibit 12."

34. Whether PAVLIK takes her dog everywhere is wholly irrelevant to whether PAVLIK needs an accommodation under the FHA in order to have an equal opportunity to enjoy her dwelling.

35. PAVLIK responded to Attorney Howe's February 28, 2016, email:

> *You are very much wrong here. As I told Mr. Marshall…I DO take the dog almost everywhere I go (my guess was 98% of time) and will have all my client, my office, friends, retailers, restaurants sign a letter stating that this is a fact. You see I work from home and rarely go into my office on PGA Blvd. but when I do I have the dog and they can verify this. I'd say the ONLY place this dog doesn't go with me is to the grocery store (which is directly across the street from me).*
>
> *It seems to me that you are listening to someone else that doesn't know my situation, or maybe not telling you the truth. I have proof of this Ms. Howe….written proof. If fact, I have so much proof of each and every*

Case Number: 9:18-cv-81488-KAM/WM

_____

> *bit of information I've given to you. My hairdresser and one of my attorneys can tell you the they weren't pleased that I brought the dog into their office.*
>
> *As I said in my last email…I am allergic to cats so instead of having a 20lbs cat I have a dog that weighs less than 10lbs. I've had my neighbors sign a statements saying that the dog doesn't disturb anyone and is not a nuance.*
>
> *My next step is to contact my Primary Care Physician who I've seen for the last 14 years and ask him to write a letter stating he is aware (and has been for MANY YEARS) that I suffer from depression and panic attacks and prescribes medications for this. I can get my records from when I was admitted to a mental hospital for severe depression if you'd like to see those records as well. I have so many professionals that can verify that I've struggled with this illness. This isn't some made up story Ms. Howe and your emails are not helping my situation. Currently I am going through a divorce and have made my situation much worse (not to mention this battle I'm having with the HOA).*
>
> *I'd like to live in peace in my own home. If it makes anyone feel any better I'm scared shitless right now. Scared ALL the time!! I can't work because the bulk of my time is spent gathering proof to win this case. The only good thing I have in my life right now and to comfort me is this dog.*
>
> *If you'd like to continue with this and waste the homeowner's money at Shoreham, I will continue to go as far as I need to. I'm not Natalie Vidon. I have a real illness so please don't ever question that again (as you did in a prior letter). You have no clue what I've been through and if anyone knew the extent, they would completely understand.*
>
> *I will win this case, and you know very well that I will Ms. Howe. Please be honest with the Association in this matter. You are on the clock and I'm sure it is starting to get costly, which benefits you. And what do you care, you're getting paid either way. If this continues, I'll need to hire another attorney who will win this case, any damages, and attorney fees so please let me know now if that needs to happen.*
>
> *Also, I wanted one days rest from this. Just one day that I'd try not to think of this so I didn't send you the information on my complaints filed to the State and Federal Housing Authority but I guess since you want to deal with this on what was supposed to be a restful Sunday, and I'm already rattled from this email. Please see the attached information from the State and Federal Housing Authority.*
>
> *My pride and ego is not too large to ask if we can please just drop this. This is very hard on me. The dog doesn't bother anyone and words can't describe the*

Case Number: 9:18-cv-81488-KAM/WM

_____

> *love and support that he gives me. Please consider this. Thank you.*

PAVLIK'S February 28, 2016, response is marked, attached, and incorporated herein as "Exhibit 13."

36. SHOREHAM, through its attorney, replied:

> *Ms. Pavlik,*
>
> *There are many hypoallergenic cats, meaning you wouldn't be allergic to them, that you can have approved to live in your unit to meet your needs stated on your doctor's letters. If you do not need the dog in the grocery store that shows you don't always need the dog with you.*
>
> *Regarding your allegation that you always bring the dog to work with you: Your prior attorney never mentioned that you only work from home and go to meetings at your office. Aren't you a realtor? Don't you have to show homes to potential buyers? Don't you have to meet with sellers in their homes? Since you advised you are okay with your employer and clients providing letters to me that you always bring your dog to work with you - please provide me with your supervisor's name and phone number at Illustrated Properties so that I can obtain a letter or affidavit from them that you have always brought your dog to work with you to corroborate the statements in your doctor's letters that you need the dog at work, including when showing homes, to prevent panic attacks at work. Also, please provide the information on the sellers and buyers you have recently sold properties to (there are six listed on your section of Illustrated Properties website) so that I can obtain letters or affidavits from them to corroborate your statements and your doctor's statements. If the association is going to make an exception for you they need the proper information. As of right now the information is conflicting.*
>
> *Your statements in your e-mail imply that I don't believe you have anxiety or depression. I have never stated that. I stated in my letters to you and your former attorney that in order for a mental impairment to be considered a disability under the Fair Housing Act a mental impairment must substantially limit one or more major life activities and an individual with a disability must demonstrate a nexus between their disability and the function the animal provides in order for an accommodation in housing to be made. Your doctor's letters stating your limitations and the function the dog provides conflict with the fact that you do not always bring your dog to work, social functions, etc. in order to prevent panic attacks.*

9

> *I didn't appreciate you implying that I am just trying to rack up my attorney fees and I am not being honest with my client. I always have my clients best interests in mind. Regarding the Natalie Vidoni case: She had three doctors testify that she had anxiety and depression and that the dog helped her with her anxiety and depression - the exact same thing you are claiming. Although her doctors testified to this at trial the court still ordered that she remove the dog from her home due to the testimony at trial that she didn't take the dog every with her including to her work.*
>
> *I realize that you love your dog and will do anything to keep your dog but you have to keep in mind that the association has to enforce the provisions in their governing documents. You chose to bring the dog into your home although you knew dogs were prohibited. You could find a new home for you and your dog somewhere that allows dogs. The association cannot make an exception for one owner and not another owner.*
>
> *Please provide the information requested in this e-mail and we can then re-evaluate if I have the wrong information and an accommodation should be made.*

Attorney Howe's February 28, 2016, reply is marked, attached, and incorporated herein as "Exhibit 14."

37. That same day, PAVLIK sent an email to her employer-supervisor, Virginia Spencer, and requested that Spencer provide verification to SHOREHAM by email to Attorney Howe that whenever PAVLIK was in the office, she was accompanied by her ESA. PAVLIK provided a courtesy copy of the email to SHOREHAM (via its attorney) to demonstrate that PAVLIK was in fact trying to comply with SHOREHAM's requests. PAVLIK's February 28, 2016, request is marked, attached and incorporated herein as "Exhibit 15."

38. On February 29, 2016, SHOREHAM, through its attorney, without obtaining or even attempting to obtain PAVLIK'S authorization, directly contacted PAVLIK's employer-supervisor, Virginia Spencer, disclosing PAVLIK'S confidential and protected health information and improperly soliciting a legally unneeded Affidavit:

> *Virginia,*
>
> *I need an Affidavit to state that Pamela always has the dog with her at the office and Affidavits from the buyers or sellers for the most recent closings she has had that state that she always had to dog with her when showing the homes, meeting*

10

Case Number: 9:18-cv-81488-KAM/WM

_____

> *with the sellers or buyers, at the closing, etc., so that it matches up with the statements in the doctor's letters that the dog is needed to prevent panic attacks so that she can participate in business meetings.*
>
> *Pam,*
>
> *Please answer my questions in my e-mail below. Also, any reason why you cannot obtain a hypoallergenic cat to help with your anxiety and depression?*
>
> *Regards,*
> *Lora D. Howe, Esq.*

Attorney Howe's February 29, 2016, communication to Virginia Spencer is marked, attached, and incorporated herein "Exhibit 16."

39. PAVLIK was humiliated by SHOREHAM's contact with her employer, by the revelation to her employer that PAVLIK has a panic disorder, and by the wholly illegal request for affidavits signed by PAVLIK's employer and clients. PAVLIK notified SHOREHAM, through Attorney Howe:

> *You asked for a letter and that is what I will provide you. I've spent my entire morning sending out emails to everyone I know. And I am starting to get those emails back. I would like to resolve this by the end of the week and do it in a friendly manner.*
>
> *I cannot continue to go on like this. I have complied with every single thing you've asked of me and at this point I consider this harassment. I say this in a calm and friendly manner, I will provide you with the information you've requested. I am having my employer and my clients put IN WRITING that I take the dog with me to my office, showings and closings. I will not have anyone filling out affidavits unless we have a court date.*
>
> *Again Ms. Howe…I am visibly shaking in my home reading your email and unable to work because I'm working on this issue instead of real estate. This is in a not so calm and friendly manner…. DO NOT EVER CONTACT MY EMPLOYER!!! YOU HAVE CROSSED A BOUNDARY HERE!.*
>
> *You will be receiving letters and emailed copies from my employer, clients, colleges and anyone else I can think of to verify I take the dog wherever I go. I'm very upset. If you want to continue with this then that's when you will get sworn affidavits. You are taking this too far and causing me to live in fear. I have complied with everything you have asked of me. I am already speaking to another attorney and will proceed if you'd like to take this to court. If that is the case, I will also be seeking damages and attorney fees.*

11

> *As soon as all information is gathered I will send it to you in an email (hopefully tomorrow). When you get the information please send me notification on or before Friday March 4, 2016 by 5:00pm that you and the Association are satisfied with the proof that I've provided that my dog is accepted as an Emotion Support/Companion Animal (I'm not an attorney so don't know the proper legal name) by the association and that this matter has been resolved. If I don't get notification I will move forward with an attorney.*

PAVLIK's February 29, 2016, email is marked, attached, and incorporated herein as "Exhibit 17."

40. PAVLIK initiated a complaint with the Palm Beach County Office of Equal Opportunity electronically on or about February 29, 2016.

41. On or about March 26, 2016, SHOREHAM filed a Petition for Mandatory Non-Binding Arbitration with the Florida Department of Business and Professional Regulation seeking to force the removal of PAVLIK's ESA and to force PAVLIK to pay SHOREHAM's attorney's fees ["Petition"]. SHOREHAM'S March 26, 2016, Petition for Mandatory Non-Binding Arbitration is marked, attached, and incorporated herein as "Exhibit 18."

42. SHOREHAM asserts in its Petition that the letters from PAVLIK's physician and the facts are insufficient medical evidence under the Fair Housing Act to grant PAVLIK an accommodation to live with her dog for emotional support because "a hypoallergenic cat would comply with the needs in the December 2, 2015 letter in which the physician prescribed any animal (not the Respondent's dog) to assist her with coping with her depression and anxiety." *Id.*

43. SHOREHAM further asserts in its Petition that because there are "alternative remedies" available to PAVLIK for her anxiety and depression, specifically a "hypoallergenic cat that she has chosen not to have or medication that she has chosen not to take," SHOREHAM does not have to accommodate PAVLIK's dog. *Id.*

44. SHOREHAM does not assert in its Petition that accommodating PAVLIK's ESA would pose an undue financial and administrative burden on SHOREHAM or would fundamentally alter the nature of SHOREHAM's operations. *Id.*

45. The Palm Beach County Office of Equal Opportunity reviewed PAVLIK's February 26, 2016, electronic submission and drafted a formal written complaint which PAVLIK signed April 16, 2016. The Petition for Mandatory Non-Binding Arbitration was stayed pending investigation of PAVLIK's housing discrimination complaint.

___

46. On December 16, 2016, the Palm Beach County Office of Equal Opportunity issued a Determination of Reasonable Cause against SHOREHAM finding SHOREHAM violated the Fair Housing laws by unreasonably delaying PAVLIK's request for accommodation of her emotional support animal and by requesting information that was not necessary to evaluate or process the request for accommodation. December 16, 2016, Reasonable Cause Determination Against SHOREHAM ["Determination Against SHOREHAM"] is marked, attached, and incorporated herein as "Exhibit 19."

47. As of the date of this filing, SHOREHAM has not granted PAVLIK an accommodation for her ESA.

48. SHOREHAM has been provided credible documentation of PAVLIK's disability and an explanation of the nexus between the requested accommodation and PAVLIK's disability.

49. SHOREHAM has been provided legally sufficient documentation of PAVLIK's disability and explanation of the nexus between the requested accommodation and PAVLIK's disability.

50. SHOREHAM chose to disbelieve the information provided, make unauthorized contact with PAVLIK's employer and clients, and to demand extraneous information and affidavits which SHOREHAM was neither entitled nor legally authorized to solicit.

51. An emotional support animal [ESA] is not a pet.

52. PAVLIK's dog is not a pet.

53. As noted by the Palm Beach County Office of Equal Opportunity in its Determination Order: "A housing provider…may not apply the same restrictions and/or registration requirements [to emotional support animals] they apply to 'pet' animals within their community." *See* Determination Against SHOREHAM, Exhibit 19.

54. As also noted by the Palm Beach County Office of Equal Opportunity in its Determination Order: "SHOREHAM did not allege any issues with Complainant's residency other than the existence of the animal in her unit." *Id.*

55. It was not until after its Petition with the Palm Beach County Office of Equal Opportunity was denied that SHOREHAM changed its tactics and first complained about more than the existence of PAVLIK's dog. *See id.*

Case Number: 9:18-cv-81488-KAM/WM

_____

56. On May 29, 2017, Debbie Morris, Realtime Property Management Property Manager, expressly declaring "For and On Behalf of the Board" of Directors of SHOREHAM, sent a letter to PAVLIK stating:

> *Realtime Property Management has received calls by several homeowners, as well as vendors, that your dog has been off leash several times, heard barking late night in the hall (walking parking lot side owners) and running loose in the parking lot. As a reminder, there are rules you must adhere to:*
>
> - *Your dog MUST be on a leash when it is not in your unit.*
> - *No Barking/Running loose in the hallways.*
> - *Not Permitted behind the buildings (sign is posted).*
> - *All "waste material" is to be in designated areas only.*
>
> *By allowing these instances to occur, you are not adhering to the agreed-upon conditions for having your dog on Shoreham Property. Moving forward, please govern yourself appropriately.*

Debbie Morris May 29, 2017, Letter is marked, attached, and incorporated herein "Exhibit 20."

57. Neither the dates of purported incidents nor the names of the purportedly-complaining homeowners or vendors were ever identified by SHOREHAM. *Id.*

58. None of the complained-of grievances are substantiated as violative of SHOREHAM's governing documents. *Cf.* SHOREHAM'S Declaration, Amended Declaration, and By-Laws are marked, attached, and incorporated herein as "Exhibit 21A," "Exhibit 21B," and "Exhibit 21C," respectively.

59. On February 23, 2018, SHOREHAM, again through Attorney Howe, threatened PAVLIK with removal of her ESA, despite the Determination Against SHOREHAM issued by the Palm Beach County Office of Equal Opportunity, stating:

> *The U.S. Department of Housing and Urban Development and case law has determined that a housing provider, such as a condominium association, is not required to permit an emotional support animal to reside in a unit if they pose a direct threat to the health and safety of other residents and their guests. It is a threat to the health and safety of other residents and their guests to not leash your dog that has shown aggression towards other residents and their guests.*

Attorney Howe's February 23, 2018, HUD Threat Letter is marked, attached, and incorporated herein as "Exhibit 22."

60. PAVLIK's ESA, Jaxson, is Malti-Pom (i.e., cross between a Maltese and Pomeranian) and weighs less than 12 lbs.

61. On April 16, 2018, SHOREHAM, again through Attorney Howe, reported to PAVLIK that SHOREHAM's Board of Directors was "left…with no choice but to vote that you must remove your dog" and that "<u>you must remove your dog from your unit and association common property within fifteen (15) days from the date of this letter</u>" else SHOREHAM would file proceedings against her with the Department of Business and Professional Regulation, file an injunction in local court, collect attorney's fees and costs, and fine her $1,000.00, before ominously concluding that: "your failure to abide by Shoreham's Declaration can be become quite costly to you." Attorney Howe's April 16, 2018, Threat Letter is marked, attached, and incorporated herein as "Exhibit 23" (emphasis in original).

62. SHOREHAM has repeatedly threatened PAVLIK with fines, litigation, and attorney's fees.

63. SHOREHAM insinuated that PAVLIK had committed a crime by misrepresenting her alleged need for a "service dog," implicitly libeling PAVLIK as well.

64. SHOREHAM's failure to modify its policies to accommodate PAVLIK's disability is discriminatory and unlawful.

65. SHOREHAM targeted PAVLIK with Petition for Non-Binding Arbitration seeking removal of her ESA and to have its legal fees and costs assessed against PAVLIK.

66. SHOREHAM's harassment and repeated threats to PAVLIK because she exercised her Fair Housing rights is discriminatory and unlawful.

67. SHOREHAM's actions were intentional, deliberate, willful and in total and reckless disregard of PAVLIK's rights, and show total indifference to PAVLIK's disabilities.

68. PAVLIK has been injured by SHOREHAM's discriminatory housing practices and therefore qualifies as an "aggrieved person" pursuant to 42 U.S.C. § 3602(i).

69. As a direct and proximate result of SHOREHAM's conduct, PAVLIK incurred attorney's fees and has suffered and continues to suffer irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

70. As a direct and proximate result of SHOREHAM's conduct, PAVLIK's property rights have been impaired and/or otherwise diminished.

71. As a direct and proximate result of SHOREHAM's conduct, PAVLIK's Fair Housing rights have been interfered with or otherwise compromised.

72. PAVLIK retained undersigned counsel and is obligated to pay a reasonable fee for their services.

73. All conditions precedent to the Plaintiff bringing this action have occurred, or the performance of such conditions has been waived by the Defendant SHOREHAM.

## IV. COUNT I
## FAILURE TO REASONABLY ACCOMMODATE

74. Plaintiff re-alleges and incorporates by reference Paragraphs 1-73 as if fully set forth herein.

75. PAVLIK suffers from severe anxiety and depression that substantially limit one or more of her major life activities.

76. PAVLIK's ESA helps ameliorate the symptoms of her depression and anxiety.

77. PAVLIK has a disability-related need to live with her ESA in order to have equal use and enjoyment of her condominium in SHOREHAM.

78. PAVLIK requested that SHOREHAM waive its pet restrictions so that she may reside with her ESA, comply with her doctor's treatment prescription, and benefit from the ESA'S assistance in coping with her depression and anxiety.

79. SHOREHAM was provided reliable verification of PAVLIK's disabilities and need to live with her ESA.

80. SHOREHAM was provided legally sufficient verification of PAVLIK's disabilities and need to live with her ESA.

81. SHOREHAM had actual knowledge of PAVLIK's disability and PAVLIK's need to live with her dog for disability-related emotional support.

82. As of the date of this filing, SHOREHAM has refused to grant PAVLIK's request for a waiver of SHOREHAM's rule forbidding dogs.

83. As of the date of this filing, SHOREHAM has failed to accommodate a reasonable request for a disability.

84. SHOREHAM made no effort to engage in a good faith dialogue with PAVLIK regarding her need for an accommodation.

Case Number: 9:18-cv-81488-KAM/WM

---

85. SHOREHAM never requesting clarification or additional information from PAVLIK, her attorney, or her psychiatrist.

86. SHOREHAM has repeatedly defamed by insinuation that PAVLIK is a liar, pettifogged two letters and an affidavit from PAVLIK's psychiatrist, illegally contacted her employer, and filed both a petition for non-binding arbitration and a selective foreclosure action against PAVLIK.

87. Accommodating PAVLIK's need to reside with her ESA would not result in substantial physical damage to the property of others.

88. Accommodating PAVLIK's need to reside with her ESA would not pose an undue financial and administrative burden.

89. Accommodating PAVLIK's need to reside with her ESA would not fundamentally alter the nature of SHOREHAM's operations.

90. SHOREHAM's failure to waive its no dog rule to accommodate for PAVLIK's disability is discriminatory and unlawful.

91. SHOREHAM's actions and conduct constitute a conscious and reckless disregard for PAVLIK's rights, and show total indifference to PAVLIK's disability.

92. SHOREHAM violated 42 U.S.C. § 3604(f)(3)(B), FHA, and § 760.23(9)(b) of the FFHA by refusing to make reasonable accommodations in its rules, policies, practices, or services, when such accommodations are necessary to afford PAVLIK an equal opportunity to use and enjoy her dwelling.

93. The discriminatory conduct of SHOREHAM was intentional, willful, and taken in total disregard for Plaintiff's rights.

94. As a direct and proximate result of SHOREHAM's failure to accommodate, PAVLIK has suffered irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

**WHEREFORE,** Plaintiff, PAMELA PAVLIK, demands judgment against the Defendant SHOREHAM CONDOMINIUM ASSOCIATION, INC, declaring that their actions violated the Fair Housing Amendments Act and the Florida Fair Housing Act by discriminating against a

Case Number: 9:18-cv-81488-KAM/WM

---

person with a disability, and awarding Plaintiff compensatory and punitive damages, and her attorneys' fees and costs, as well as any other such relief as this Court deems just and equitable.

## V. COUNT II
## ILLEGAL INTIMIDATION

95. Plaintiff re-alleges and incorporates by reference Paragraphs 1-73 as if fully set forth herein.

96. SHOREHAM insinuated that PAVLIK had committed a crime and libeled her when its legal representative, Attorney Howe, reported that PAVLIK fraudulently claimed that she needed a "service animal" and that PAVLIK was lying about her disability and need for an accommodation.

97. SHOREHAM's statement that "it is a crime to allege you have a service animal when you cannot substantiate that you have a legit service animal…" was intended to intimidate and humiliate Plaintiff and to discourage her from exercising her FHA rights.

98. SHOREHAM not only accused PAVLIK of faking her disability-related need for an accommodation, but also accused her of committing a crime by merely having asked for permission to live with her ESA in her own condominium.

99. SHOREHAM also repeatedly threatened PAVLIK with fines and/or litigation in which PAVLIK would saddle the bill for SHOREHAM's legal fees and costs if PAVLIK did not remove here ESA.

100. SHOREHAM violated 42 U.S.C. § 3617 of the FHA and §760.37 of the FFHA by coercing, intimidating, threatening, and interfering with PAVLIK in the exercise and enjoyment of her Fair Housing rights.

101. The discriminatory conduct of SHOREHAM was intentional, willful, and taken in disregard for PAVLIK's rights.

102. As a direct and proximate result of the DEFENDANTS' conduct, PAVLIK does not want to leave her home, carries great trepidation when walking to/from her vehicle, experiences paranoia in and around the SHOREHAM Community that other residents are questioning, judging, and otherwise criticizing the presence of her ESA, and otherwise does not feel welcome, comfortable, or safe from the hostility created, culled, and otherwise fostered by DEFENDANTS.

103. As a direct and proximate result of the DEFENDANTS' conduct, PAVLIK has suffered and continues to suffer irreparable loss and injury including, but not limited to, mental anguish,

loss of dignity, emotional distress, humiliation, and loss of her right to equal housing opportunities regardless of disability.

**WHEREFORE,** Plaintiff, PAMELA PAVLIK, demands judgment against the Defendant, SHOREHAM CONDOMINIUM ASSOCIATION, INC. declaring that its actions violated the Fair Housing Amendments Act and the Florida Fair Housing Act by discriminating against a person with a disability, and awarding Plaintiff compensatory and punitive damages, and her attorneys' fees and costs as well as any other such relief as this Court deems just and equitable.

## VI. DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all issues so triable.

Respectfully submitted,

| | |
|---|---|
| MARCY I. LAHART, P.A. | VENZA LAW, PLLC |
| *s/Marcy LaHart* | *s/Denese Venza* |
| Marcy I. LaHart, Esq. | Denese Venza, Esq. |
| 207 SE Tuscawilla Road | 931 Village Boulevard, #905-322 |
| Micanopy, FL 32667 | West Palm Beach, FL 33409 |
| (352) 545-7001 | (561) 596-6329 |
| marcy@floridaanimallawyer.com | dvenza@venzalawpllc.com |
| Florida Bar No. 0967009 | Florida Bar No. 0599220 |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of April, 2019, a true and correct copy of the foregoing AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL has been furnished via CM/ECF electronic mail service to the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

BY: *s/Denese Venza*
Denese Venza, Esq.